```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF MISSOURI
                        EASTERN DIVISION


BUSINESS INTEGRATION              )
TECHNOLOGY, INC.,                 )
                                  )
          Plaintiff,              )
                                  )
     v.                           )   Case No. 4:10CV2185 FRB
                                  )
MULESOFT, INC., et al.,           )
                                  )
          Defendants.             )
```

**MEMORANDUM AND ORDER**

Presently pending before the Court is Defendants' Joint Motion To Dismiss The Amended Complaint Pursuant To Federal Rule Of Civil Procedure 12(b) Or, In The Alternative, Transfer The Action Pursuant To 28 U.S.C. § 1404 (Docket No. 39), filed by defendants MuleSoft, Inc. ("MuleSoft") and Philip T. Bradley. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

**I.   Factual and Procedural Background**

Invoking this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332, plaintiff Business Integration Technology, Inc. (also "BIT"), a Missouri corporation, originally filed its ten-count Complaint against defendants, residents of California, on November 23, 2010, alleging claims of Intentional Interference with a Contractual Relationship (Count I), Punitive Damages (Count II), Fraud (Count III), Punitive Damages (Count IV), Conspiracy (Count V), Punitive Damages (Count VI), Prima Facie Tort of Intentional

- 1 -

Interference with Business Expectancy (Count VII), Punitive Damages (Count VIII), Breach of Contract (Count IX), and Punitive Damages (Count X). (Docket No. 1).

The undersigned first considers the instant Motion to the extent that Defendants seek transfer of this cause to the United States District Court for the Northern District of California. The following facts are relevant. BIT, based in St. Louis, Missouri, provides business information technology services to companies. BIT had such a business relationship with St. Louis-based Express Scripts, Inc. (also "ESI"). MuleSoft, based in San Francisco, California (also referred to as MuleSource), is a software company which distributes both a free ("open source") version of its software, and a paid enterprise version.

BIT alleges that, in June of 2007, it entered into a partnership with defendant MuleSoft for the purpose of allowing BIT to sell software license agreements and support services to corporations, which included ESI. BIT alleges that MuleSoft advertised its relationship with BIT via press releases, newsletters, and internet postings, including postings on MuleSoft's website. MuleSoft also engaged BIT to do consulting work for MuleSoft's clients as an independent contractor. BIT paid $4,950.00 in consideration to MuleSoft for training MuleSoft required. In March of 2008, MuleSoft provided BIT with a partner login and password on its website.

On June 1, 2009, BIT and MuleSoft executed a Reseller Agreement, which contained the following provisions:

2.5     **Non-Exclusive**.  The rights granted to Reseller hereunder are non-exclusive and nothing under this Agreement shall be deemed to prohibit MuleSource from entering into any reseller, end-user license, services or other agreement with any other party anywhere in the world either during or after the Term of this Agreement.

14.3    **Governing Law: Jurisdiction and Venue**. This Agreement and all related actions and proceedings shall be governed by the laws of the State of California and the United States without regard to conflicts of laws provisions thereof, and without regard to the United Nations Convention on the International Sale of Goods.  Unless waived by MuleSource in its sole discretion, the jurisdiction and venue for actions related to the subject matter hereof shall be the California state and United States federal courts located in San Francisco, California, and both parties hereby submit to the personal jurisdiction of such courts.


14.7    **Entire Agreement**.  This Agreement is the complete and exclusive statement of the mutual understanding of the parties and supersedes and cancels all previous written and oral agreements and communications relating to the subject matter of this Agreement.

14.8    **Independent Contractors**.  The parties to this Agreement are independent contractors. There is no relationship of partnership, joint venture, employment, franchise or agency created hereby between the parties.  Neither party will have the power to bind the other or incur obligations on the other party's behalf without the other party's prior written consent.

(Docket No. 36, Attachment 2).


Under the Reseller Agreement, MuleSoft permitted BIT to distribute software and MuleSoft services in a certain territory, and permitted BIT to provide maintenance and support services to

customers. The Reseller Agreement provided that BIT would receive a 40% discount on subscription prices, which BIT could either pass on to customers or retain as a margin.

BIT alleges that MuleSoft canceled the Reseller Agreement in April of 2010, severed its partnership with BIT, removed mention of BIT from its website, and deactivated BIT's partner login and password. BIT alleges that MuleSoft contracted directly with ESI, alienating BIT from its relationship with ESI, and also refused to pay BIT a reseller or referral fee. BIT alleges that, following this interference, ESI cut off all communication with BIT, causing BIT to lose past and future loss of revenues and profits, loss of resources expended in developing the relationship with ESI, and loss of future business opportunity.

On January 9, 2011, Defendants filed a Motion To Dismiss Or, In The Alternative, To Transfer, arguing that this Court lacked personal jurisdiction over defendant Bradley and lacked subject matter jurisdiction inasmuch as the amount in controversy was less than $75,000.00; and that the matter should be dismissed for improper venue because of a contractual venue provision and forum-selection clause or, alternatively, transferred to an appropriate court in San Francisco, California, pursuant to Section 1404(a). (Docket No. 11). When BIT did not file a response to Defendants' Motion within the time prescribed by the Local Rules of this Court, Defendants again sought dismissal of the Complaint. (Docket No. 15). BIT moved for and received from this Court an extension of time, and on February 16, 2011, filed a response to Defendants'

Motion, and also moved for leave to amend its Complaint.[1] (Docket Nos. 25 and 26). As an attachment to its motion for leave to amend, BIT filed a proposed First Amended Complaint which contained the same ten claims asserted in the original Complaint.[2] (Docket No. 26, Attachment 1). In support of its Motion For Leave To Amend Pleadings, BIT averred that, during the course of reviewing Plaintiff's Motion, counsel identified issues in the original Complaint that required amendment. (Docket No. 26 at page 2). Defendants objected to BIT's Motion for leave to amend its Complaint, arguing <u>inter alia</u> that BIT was seeking leave to amend primarily to avoid the strictures of the Reseller Agreement, which included clauses regarding forum selection and limitations on damages. (Docket No. 31). BIT filed a reply, averring that its proposed amendments were sought in good faith; that the proposed amendments were not futile or prejudicial; that it was not seeking to add new claims for relief but only to refine those that were alleged in the original Complaint; and that its First Amended Complaint would include the same exhibits as the original Complaint. (Docket No. 34).

On April 28, 2011, this Court granted BIT's motion for leave to file a First Amended Complaint, noting <u>inter alia</u> BIT's averment that it was not seeking to add new claims or prejudice

---

[1] BIT originally filed a memorandum and affidavit in response to Defendants' Motion that it subsequently moved to have stricken from the record, averring that it contained information that was inadvertently included. (Docket No. 27/filed February 16, 2011). On February 18, 2011, this Court granted BIT's request and ordered the pleadings stricken from the record. (Docket No. 30).

[2] BIT did not attach proposed exhibits.

Defendants. (Docket No. 35). In that Order, this Court noted that BIT had attached to its Motion a proposed First Amended Complaint but had failed to include exhibits, and that this Court would therefore not docket the attached proposed First Amended Complaint but would instead give BIT an additional ten days to file a First Amended Complaint with all necessary exhibits. Id.

On May 9, 2011, BIT filed "Plaintiff's First Amended Complaint" (also "First Amended Complaint"), with exhibits. (Docket No. 36). The First Amended Complaint BIT filed contained the ten causes of action enumerated above, plus four additional claims: Breach of Fiduciary Duties (Count XI), Punitive Damages (Count XII), Breach of Implied Covenant of Good Faith and Fair Dealing (Count XIII), and Punitive Damages (Count XIV). Id. One difference between the original Complaint and the First Amended Complaint is that Count IX (Breach of Contract) of the original Complaint alleged breach of the Reseller Agreement and a partnership, while Count IX (Breach of Contract) of the First Amended Complaint alleged only breach of an alleged partnership. See (Docket Nos. 1 at pages 18-19 and 36 at pages 17-18).

In the instant Motion, Defendants seek to enforce the forum selection clause contained within the Reseller Agreement, and ask this Court to transfer this action to the Northern District of California pursuant to 28 U.S.C. § 1404. Defendants argue that the forum selection clause applies broadly to actions related to the subject matter of the Reseller Agreement, which was the terms of BIT's status as a reseller of MuleSoft's software and BIT's

- 6 -

provision of support services to customers.  Defendants argue that BIT's claims for intentional interference with a contract, fraud, conspiracy, and prima facie tort each turn on Defendants' alleged interference with BIT's right to sell MuleSoft software and support to end users, and that BIT's contract claim is based upon the same operative facts.

In response, BIT contends that Defendants are attempting to "reduce a long-standing business relationship, which has developed over the years into various business ventures to a single Reseller Agreement, executed years after the formation of the partnership and for a narrow purpose, and, under which absolutely no work was ever completed."  (Docket No. 46 at page 2).  BIT complains that Defendants fail to recognize the fact that partnership was built on recognized fiduciary duties of loyalty and fair dealing, numerous joint ventures and other business cooperatives.  BIT argues that the actions forming the basis for its tort and contract claims do not flow from the Reseller Agreement but instead "arise from the partnership agreement and other business ventures that pre-date the existence of the Reseller Agreement by two years, and specifically the partnership entered into on June 1, 2007, and the consulting work commencing on July 27, 2007."  (Docket No. 46 at page 8).  BIT also contends that it would not have anticipated having to litigate all of its claims in California, and that transfer to California would be inconvenient, inasmuch as all witnesses and documents are located in Missouri.

In response, Defendants noted that, although BIT alleges

damages arising from an alleged partnership agreement and other business ventures, the Reseller Agreement covers the same subject matter and unambiguously superseded all prior agreements. Defendants also note that BIT's claims arose after the execution of the Reseller Agreement. Defendants conclude that the subject matter of both the partnership to which BIT refers and the Reseller Agreement is the sale of MuleSoft software and support services to end users such as ESI, the same subject matter as BIT alleged as the basis of its causes of action in its First Amended Complaint, and the Reseller Agreement's terms therefore apply.

## II.  Discussion

Section 1404(a) of 28 U.S.C. governs this court's ability to transfer a civil case to another district. This section reads: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Eighth Circuit has noted that the statutory language reveals three general categories of factors the Court must consider: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. Terra Intern., Inc. v. Mississippi Chemical Corp., 119 F.3d 688, 691 (8th Cir. 1997). However, this Court's analysis is not limited to these enumerated factors, as such matters must be considered on a case-by-case basis. Id. In circumstances where, as here, a forum selection clause exists, such clause "is 'a significant factor that figures centrally in the district court's calculus.'" Id. (quoting

Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

    A.    <u>Forum Selection Clause</u>

Before considering the forum selection clause as a central factor in the § 1404(a) analysis, however, the Court must first determine whether the clause is valid and applies to the claims raised in the instant cause of action. Id. at 692. Plaintiff herein argues not that the clause is invalid, but instead that it does not apply to its causes of action. This Court will therefore focus upon the clause's applicability to Plaintiff's causes of action.

There is some disagreement among courts regarding whether state or federal law applies to the analysis of the enforceability of a forum selection clause. Servewell Plumbing, LLC v. Federal Ins. Co., 439 F.3d 786, 789 (8th Cir. 2006) (internal citations omitted)(noting that because "the enforceability of a forum selection clause concerns both the substantive law of contracts and the procedural law of venue" the circuits disagree regarding whether federal or state law applies, and the Eighth Circuit has yet to adopt a definitive position on the issue). However, the Court does not believe it is necessary to resolve this issue here, inasmuch as both California and Missouri have adopted the federal standard, and neither party argues that the application of either standard would materially affect the outcome; in fact, Plaintiff acknowledges that the ambiguity regarding the applicability of state or federal law should not affect this Court's analysis. (Docket No. 46 at page 7). This Court will therefore apply federal

law.  See Id. (internal citation omitted) (applying federal law to determine enforceability of forum selection clause where parties did not argue federal and state standards differed).

In its First Amended Complaint and pleadings, Plaintiff alleges that it and Defendants "carried on as co-owners of a business for profit," whereby the parties provided software license agreements and support service jointly to customers, and whereby BIT provided consulting services to Defendants' customers. (Docket No. 46 at page 2).  Plaintiff avers that the "actions forming the basis for this lawsuit are outside the scope of the Reseller Agreement, and flow directly from the partnership and other business ventures between Defendants and BIT."  (Docket No. 46 at page 5).  However, a reading of Plaintiff's First Amended Complaint shows that Plaintiff's tort and contract claims are based upon the same terms of the relationship between the parties as encompassed by the Reseller Agreement.  First, the undersigned notes that BIT sets out very few factual allegations about its alleged partnership and/or other business ventures with Defendants.  BIT does not set out whether the partnership or other business ventures were written or oral, and in fact never describes them with great specificity.  Nevertheless, in its First Amended Complaint, Plaintiff describes the alleged partnership as beginning in 2007, and states that the partnership was entered into for the purpose of allowing BIT to sell MuleSoft software license agreements and support services to corporations (one of which was ESI), and that such software licenses would be sold through BIT.  (Docket No. 36 at ¶ 10, 31).

BIT alleges that it began negotiating with ESI regarding ESI's purchase of a MuleSoft product subscription through BIT and concurrent support services to be provided by BIT related to that MuleSoft subscription, and that the value of same would have exceeded $100,000.00 annually.  (Id. at ¶ 31).  BIT alleges that Defendants refused to pay a reseller fee relating to ESI.  (Id. at ¶ 39).

The Reseller Agreement encompassed all aspects of the relationship between the parties as described by Plaintiff in its First Amended Complaint: BIT's right to distribute certain products and services; the terms and conditions under which those products and services were to be delivered; BIT's permission to provide maintenance and support services to customers like ESI; and even the subscription price discount BIT would receive.  Furthermore, as Plaintiff does not contest, the Reseller Agreement explicitly superseded all prior agreements between the parties, removing Plaintiff's ability to rely upon the existence of an alleged partnership or any other business ventures as the basis for its allegations against Defendants.  In addition, while not dispositive, the undersigned notes that it is logical to conclude that if Plaintiff is correct that its causes of action flow directly from the partnership and other business ventures, its causes of action would now flow directly from the agreement that explicitly superseded the partnership and other business ventures.  Also notable but not dispositive is the fact that the conduct of which BIT complains occurred after the Reseller Agreement was

executed.

Plaintiff briefly states that, because defendant Bradley was not a party to the Reseller Agreement, Plaintiff's claims against him are not subject to the terms thereof. Plaintiff's statement is not compelling. Both parties have represented to this Court that defendant Bradley is an officer of MuleSoft, which was undisputedly a party to the Reseller Agreement. Defendant Bradley is closely related to the disputes arising out of the parties' relationship, and, as discussed above, the parties' relationship was defined by the Reseller Agreement. As such, it was foreseeable that defendant Bradley would be bound by those terms. Defendant Bradley is properly bound by the forum-selection clause contained in the Reseller Agreement. Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P., 254 F.3d 753, 757 -758 (8th Cir. 2001) (citing Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir.1993) ("In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound."))

This Court has also considered whether the forum selection clause applies to all of Plaintiff's claims, whether contract or tort. See Terra Intern., Inc., 119 F.3d at 693-95 (forum selection clauses apply not only to contract actions but to related tort claims). In Terra, the Eighth Circuit determined that the forum selection clause providing that any disputes "arising between the parties hereunder" applied to the plaintiff's tort claims because those claims involved "the same operative facts as

would a parallel claim for breach of contract." Id. at 695. As explained above, and as was the outcome in Terra, Plaintiff's tort and contract claims herein involve the same operative facts, and the forum selection clause therefore applies to all of them.

This Court is not willing to construe the Reseller Agreement in as narrow fashion as Plaintiff suggests. As Defendants correctly note, the subject matter of the Reseller Agreement encompassed activities related to the combination of reselling software and providing support services to third parties such as ESI. The operative facts Plaintiff alleges in support of its tort and contract claims are the same: that BIT was supposed to be able to provide products and related services to ESI but that did not happen because of Defendants' interference, and BIT suffered losses. Despite Plaintiff's attempts to characterize the relationship as involving something else entirely, the combination of reselling and providing support services sums up the relationship between Plaintiff and Defendants, and the causes of action Plaintiff alleges all stem from that relationship that is encompassed by the Reseller Agreement.

In addition, the forum selection clause of the Reseller Agreement is very broad, encompassing not only the Reseller Agreement itself, but "all related actions and proceedings." (Docket No. 36, Attachment 2). Inasmuch as the Reseller Agreement is the vehicle by which BIT obtained the right to the software and the right to provide related services to ESI that Defendants allegedly interfered with in various ways, it cannot be said that

Plaintiff's tort and contract claims fall outside the scope of the Reseller Agreement and, hence, its forum selection clause. Although Plaintiff's First Amended Complaint does not raise as a separate and independent claim that Defendants breached the Reseller Agreement, Plaintiff's artfully drawn pleading will not work to circumvent the otherwise applicable forum selection clause. See Terra Intern., Inc. v. Miss. Chem. Corp., 922 F.Supp. 1334, 1390 (N.D. Iowa 1996) ("courts will not tolerate 'artful pleading' to avoid a forum selection clause.")  Therefore, for all of the foregoing reasons, the undersigned determines that the forum selection clause contained in the Reseller Agreement applies to the claims raised in the instant cause of action.

B.   Balance of Convenience

Although the clause figures centrally in this Court's determination whether to transfer the cause pursuant to § 1404(a), this Court must nevertheless continue to consider all relevant factors before reaching a decision. Terra Intern., Inc., 119 F.3d at 691 (internal citation omitted).  These factors include the convenience of the parties and the witnesses, and the interests of justice, among others.  Id. at 695-96.

In opposition to the instant Motion, BIT argues that litigation in California would be inconvenient because, with the exception of Defendants, all witnesses, specifically key non-party fact witnesses, and integral documents are located in Missouri, and that the actions forming the basis of the First Amended Complaint occurred in Missouri.  However, on the information before the

Court, it cannot be said that the convenience of the parties and prospective witnesses, and the location of necessary documents, tips the balance in favor of either forum.  Defendants reside in California, and it would be just as inconvenient for them to litigate in Missouri as it would be for Plaintiff to litigate in California.  Furthermore, Plaintiff does not specify how many witnesses it has, or offer any indication of their willingness or ability to travel in conjunction with this litigation.  Similarly, Plaintiff offers no specific information regarding exactly what documents are located in Missouri, and how litigation in California would affect access thereto.  The undersigned finds that denying Defendants' Motion because venue here is more convenient to Plaintiff would resolve nothing, and would serve only to shift the burden from Plaintiff to Defendants.  Plaintiff cannot prevail by simply seeking to shift the inconvenience from its side to Defendants' side.  <u>See</u> <u>Terra Intern., Inc.</u>, 119 F.3d at 696-97 (shifting the inconvenience from one side to the other is not a permissible justification).

        The undersigned reaches the same conclusion after considering the comparative costs to each party of litigating in its chosen forum, each party's ability to enforce a judgment, obstacles to a fair trial, and the advantages of having a local court determine the outcome: finding in favor of Plaintiff on these factors would merely shift the inconvenience and risk from Plaintiff to Defendants.  <u>See</u> <u>Id.</u>  With respect to discovery, the undersigned notes that the instant case is in the preliminary

stages and that no extensive discovery efforts have begun, and as such, this is not a factor that weighs heavily in favor of either forum. Finally, although Plaintiff avers that the conduct giving rise to this cause of action occurred in Missouri, it is also clear that sufficient conduct related to the cause occurred in California. Plaintiff chose to do business with Defendants, California residents, and of its own accord entered into an agreement with Defendants that Plaintiff agrees is governed by California law. Plaintiff is a sophisticated business entity, one on equal footing with Defendants. Plaintiff does not allege, nor is it apparent following review of the record, that fraud, undue influence, or imbalance in bargaining power was involved when these business entities made their respective decisions to enter into the Reseller Agreement.

The Eighth Circuit has noted that federal courts generally "give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Id. at 695. However, courts have also noted that the existence of a forum selection clause shifts the burden to the party opposing the transfer motion. Id. (internal citations omitted). In the case at bar, having determined that the forum selection clause applied to Plaintiff's claims, the undersigned did believe that the burden was on Plaintiff to demonstrate why it should not be enforced. However, even if the burden rested upon the Defendants, the undersigned concludes that Defendants fulfilled

any potential burden they had to prove that transfer is warranted.

Upon consideration of all of the relevant factors in the circumstances of the case at bar, the undersigned determines to transfer this cause to the Northern District of California pursuant to 28 U.S.C. § 1404. It cannot be said that the convenience of the parties and witnesses decidedly weigh in favor of either the Northern District of California or the Eastern District of Missouri. Nevertheless, given the valid and applicable forum selection clause contained in the Reseller Agreement, the undersigned determines, in the interests of justice, that such clause tips the balance decidedly in favor of the Northern District of California. Although the undersigned is aware that courts are normally to defer to a plaintiff's choice of forum, "such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." Jumara v. State Farm Ins. Co., 55 F.3d 873, 880 (3rd Cir. 1995) (internal citations omitted). The forum selection clause is applicable to Plaintiff's claims, and operates as an expression of the parties' agreed-upon preference as to the proper forum for this litigation. As such, it weighs "significantly" in this Court's transfer analysis, particularly when, as here, a balance of the other factors fails to tip the scale in favor of either forum.

The forum selection clause dictates that the proper forum for this litigation is not here, but in the Northern District of California. Having thus determined, the undersigned declines to reach the remaining arguments presented in the instant Motion,

inasmuch as they are most appropriately raised and addressed in the proper forum.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Joint Motion To Dismiss The Amended Complaint Pursuant To Federal Rule Of Civil Procedure 12(b) Or, In The Alternative, Transfer The Action Pursuant To 28 U.S.C. § 1404 (Docket No. 39) is granted to the extent it seeks to transfer venue in this cause to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).  In all other respects, Defendants' Motion is denied without prejudice.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1404(a), the Clerk of Court shall transfer this action to the United States District Court for the Northern District of California.

_Frederick R. Buckles_
Frederick R. Buckles
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of September, 2011.