IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUSINESS INTEGRATION TECHNOLOGY, | No. C 11-04782 EDL |
| Plaintiff, | **ORDER** |
| v. | |
| MULESOFT INC., et al., | |
| Defendants. | |

On November 22, 2011, the Court held a hearing on Defendants' motion for judgment on the pleadings and to dismiss for lack of subject matter jurisdiction. All parties appeared through counsel. For the reasons stated on the record and as set forth below, Defendants' motion for judgment on the pleadings is GRANTED WITHOUT PREJUDICE as to the claims for intentional interference with contract and intentional interference with prospective economic advantage, and GRANTED WITH PREJUDICE as to the remaining claims; Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED WITHOUT PREJUDICE.

**I.  Background**

On November 23, 2010, Plaintiff Business Integration Technology ("BIT") filed a Complaint in the District Court for the Eastern District of Missouri against Defendants MuleSoft, Inc., a software company formerly named MuleSource, and Philip T. Bradley, an officer and employee of of MuleSoft. The complaint alleged that on or about June 1, 2007, MuleSoft entered into a partnership with BIT for the purpose of selling software license agreements and support services to corporations, one of which was Express Scripts, Inc. ("ESI"), with which BIT allegedly had a business relationship since May 2005. Compl. ¶¶ 7-10. Plaintiff alleges generally that Defendants wrongfully terminated

the parties' business relationship, failed to pay BIT a referral fee after BIT introduced Defendants to a client (ESI) who purchased a software license and support services from MuleSoft, and caused BIT to lose business and potential customers. The original complaint alleged ten causes of action: Intentional Interference with Contractual Relationship (Count I); Punitive Damages (Count II); Fraud (Count III); Punitive Damages (Count IV); Conspiracy (Count V); Punitive Damages (Count VI); Prima Facie Tort of Intentional Interference with Business Expectancy (Count VII); Punitive Damages (Count VIII); Breach of Contract (Count IX); Punitive Damages (Count X).

On January 9, 2011, Defendants moved to dismiss the complaint or transfer venue. On February 16, 2011, BIT filed a motion for leave to amend, accompanied by a proposed first amended complaint ("FAC") without exhibits. Doc. no. 26. On April 28, 2011, the court granted leave to amend and ordered BIT to file an amended complaint with all necessary exhibits attached. BIT filed the FAC on May 9, 2011. The documents that are attached to the First Amended Complaint are identical to those attached to the Complaint. However, the FAC filed by BIT adds four new claims that were not presented to the court in the proposed first amended complaint in support of the motion for leave to amend: Breach of Fiduciary Duties (Count XI); Punitive Damages (Count XII); Breach of Implied Covenant of Good Faith and Fair Dealing (Count XIII); Punitive Damages (Count XIV). See FAC.

The FAC alleges that from June 1, 2007, BIT and MuleSoft had a partnership to sell MuleSoft software licenses and provide support services, that MuleSoft advertised the partnership in press releases and on its website, and that BIT paid MuleSoft $4,950.00 for training required by MuleSoft for its Partnership Program. FAC ¶¶ 10-16. The FAC also alleges that MuleSoft engaged BIT to do consulting work as an independent contractor for MuleSoft's clients. FAC ¶ 13. The FAC further alleges that on June 1, 2009, the parties executed a Reseller Agreement, "in addition to its already existing partnership." FAC ¶ 19. The FAC alleges that the Reseller Agreement ("RA"), attached as Exhibit 2, provides for "automatic renewal of one year terms unless cancelled according to the terms of the agreement." FAC ¶ 19. Specifically, the RA provides as follows:

\\

**6.    Term of Agreement**

    **6.1**    **Term.**
. . . Unless terminated, this Agreement shall automatically renew upon expiration of the Initial Term for up to one (1) addition one (1) year term unless either party gives the other prior written notice of cancellation at least 30 days prior to expiration of the then-current term.

    **6.2**    **Termination.**
. . . MuleSource shall have no liability to Reseller of any type arising from termination of this Agreement.

The RA further provides, "This Agreement is the complete and exclusive statement of the mutual understanding of the parties and supersedes and cancels all previous written and oral agreements and communications relating to the subject matter of this Agreement." RA ¶ 14.7. The RA also provides, "The parties to the Agreement are independent contractors. There is no relationship of partnership, joint venture, employment, franchise or agency created hereby between the parties." RA ¶ 14.8. The RA further limits liability under the agreement as follows: "NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, MULESOURCE'S (AND ITS THIRD-PARTY SUPPLIERS') ENTIRE LIABILITY UNDER THIS AGREEMENT SHALL NOT EXCEED THE AMOUNT ACTUALLY PAID BY RESELLER TO MULESOURCE UNDER THIS AGREEMENT." RA ¶ 9.2.

Defendants filed a motion to dismiss the FAC and, in the alternative, to transfer venue. The District Court for the Eastern District of Missouri granted Defendants' motion to transfer the action to this Court and denied without prejudice the motion to dismiss on the grounds of lack of subject matter jurisdiction, improper venue and failure to state a claim. See doc. no. 53. In granting the motion to transfer venue, the court held that the forum selection clause contained in the RA encompassed not only the RA itself but "all related actions and proceedings." Doc. no. 53 at 13. The court determined that the RA encompassed all aspects of the parties' relationship as described in the FAC in support of BIT's tort and contract claims: "BIT's right to distribute certain products and services; the terms and conditions under which those products and services were to be delivered; BIT's permission to provide maintenance and support services to customers like ESI; and even the subscription price discount BIT would receive." Id. at 11. The court further held, "as Plaintiff does not contest, the Reseller Agreement explicitly superseded all prior agreements between the parties,

3

removing Plaintiff's ability to rely upon the existence of an alleged partnership or any other business ventures as the basis for its allegations against Defendants." Id. In finding that the forum selection clause applied to BIT's action, the court further noted that "while not dispositive, . . . it is logical to conclude that if Plaintiff is correct that its causes of action flow directly from partnership and other business ventures, its causes of action would now flow directly from the agreement that explicitly superseded the partnership and other business ventures." Id.

Defendants now move for judgment on the pleadings and to dismiss for lack of subject matter jurisdiction pursuant to FRCP 12(c) and 12(b)(1).

## II.   Motion for Judgment on the Pleadings

### A.   Legal Standard

Under Federal Rule of Civil Procedure Rule 12(c), "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." A motion for judgment on the pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing party's pleadings. Westlands Water Dist. v. Bureau of Reclamation, 805 F.Supp. 1503, 1506 (E.D.Cal.1992). "Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law." General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d 228, 230 (9th Cir.1989). Courts have the discretion to grant a Rule 12(c) motion with leave to amend. Schwarzer, Tashima & Wagstaffe, Rutter Group Practice Guide: Federal Civil Procedure Before Trial 9-109 (The Rutter Group, 2011).

A motion for judgment on the pleadings is treated the same as a motion to dismiss under Rule 12(b)(6). Hal Roach Studios v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir. 1990). A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008). Courts must then determine whether the factual allegations in the

4

1  complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is
2  not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual
3  allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id.
4  at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their
5  claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

6        Federal Rule of Civil Procedure 8(a) states that a pleading shall contain "a short and plain
7  statement of the claim showing that the pleader is entitled to relief." The statement need only give
8  the defendant "fair notice of the claim and the grounds upon which it rests." Erickson v. Pardus, 551
9  U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555). Under Federal Rule of Civil Procedure 12(e),
10 the court may order the plaintiff to amend his complaint to provide a more definite statement if the
11 complaint is "so vague and ambiguous that a party cannot reasonably be required to frame a
12 responsive pleading."

13       In actions alleging fraud, "the circumstances constituting fraud or mistake shall be stated
14 with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), the complaint must allege specific facts
15 setting forth the circumstances which constitute the fraud. In re GlenFed Sec. Litig., 42 F.3d 1541,
16 1547-49 (9th Cir.1994) (en banc) (superseded by statute on other grounds). "To allege fraud with
17 particularity, a plaintiff must set forth more than the neutral facts necessary to identify the
18 transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is
19 false. In other words, the plaintiff must set forth an explanation as to why the statement or omission
20 complained of was false or misleading." Id. at 1548.

21     **B.**    **Analysis**

22           **1.**    **Intentional Interference with Contractual Relationship**

23       BIT's first claim for relief is for intentional interference with contract. "The elements which
24 a plaintiff must plead to state the cause of action for intentional interference with contractual
25 relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of
26 this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the
27 contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5)
28 resulting damage." Quelimane Co., Inc. v. Stewart Title Guaranty Co., 19 Cal. 4th 26, 55, 77 Cal.

5

1  Rptr. 2d 709, 726 (1998) (quoting Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal. 3d
2  1118, 1126, 270 Cal. Rptr. 1 (1990))._

3  BIT contends that the FAC sufficiently states a claim by alleging that BIT had a valid written
4  Consulting Agreement with ESI; that Defendants knew of the contract because BIT introduced
5  Defendants to ESI executives; that Defendants' intentional acts of meeting with ESI executives
6  without BIT and entering a contract directly with ESI were intended to alienate ESI from BIT; that
7  after MuleSoft severed its partnership with BIT, ESI ended all communications with BIT; and that
8  MuleSoft's actions proximately caused damage to BIT.  FAC ¶¶ 25, 30-42 and Ex. 3 (Consulting
9  Agreement between BIT and ESI).

10  Defendants contend that under the Reseller Agreement, MuleSoft is permitted to contract
11  directly with any end user, citing ¶ 2.5 ("nothing under this Agreement shall be deemed to prohibit
12  MuleSource from entering into any reseller . . . or other agreement with any other party") and ¶ 8.1
13  ("nothing under this Agreement shall prohibit MuleSource from offering its services [ ] directly to
14  any end user of the Software").  Thus, Defendants argue, the intentional interference claim fails
15  because BIT agreed that MuleSoft could contract directly with ESI.  Reply at 4.  This argument,
16  however, does not address the allegations not only that MuleSoft cut out BIT as the middleman by
17  contracting directly with ESI, but that MuleSoft allegedly interfered with BIT's existing contract
18  with ESI.  As BIT argues, "the non-exclusivity clause could hardly be construed to grant a right to
19  Defendants to intentionally disrupt a pre-existing contractual relationship between BIT and BIT's
20  own client, ESI."  Opp. at 7.

21  Defendants further argue that the FAC fails to allege that Defendants were aware of BIT's
22  alleged contract with ESI, other than a "threadbare" allegation that Defendants "were aware of the
23  contractual relationship."  See FAC ¶ 33.  However, the FAC also alleges that Defendants had no
24  prior contact with ESI before being introduced by BIT's representative, Fred Domke.  Id. ¶ 32.
25  Furthermore, Defendants argue that BIT's intentional interference claim cannot be supported by an
26  unenforceable agreement to agree, but the allegations state that BIT and ESI had entered a written
27  consulting agreement in August 2008.  FAC ¶ 25.

6

Defendants also argue that the FAC at most demonstrates that BIT executed a contract with ESI which would expire August 24, 2009, so that no effective contract existed between BIT and ESI at the time of the alleged interference in November 2009. See FAC, Ex. 4 (Statement of Work #1). Defendants point out that the copy of Statement of Work # 2, effective April 22, 2009, that is attached to the FAC is not signed and does not establish that the second contract was executed. Id., Ex. 5. At oral argument, BIT's counsel acknowledged that BIT did not have a signed copy of the Statement of Work #2 but represented that BIT believed that a copy of that contract was signed and requested leave to amend the complaint to allege that ESI and BIT intended for the ESI contract to be extended. The Court hereby grants leave to amend the claim for intentional interference with contract to clarify the allegations as to whether a contract existed at the time of the alleged interference.

Because BIT's claim for intentional interference with contract sounds in tort if sufficiently pled, the claim could support relief in the form of punitive damages. The remedy of punitive damages does not, however, state an independent claim. See Brown v. Adidas Int., 938 F.Supp. 628, 635 (S.D. Cal. 1996). Defendants' motion to dismiss is therefore GRANTED WITHOUT PREJUDICE as to Count I. BIT is granted leave to amend the allegations in support of the claim for intentional interference with contract and the prayer for relief.

**2.     Fraud**

BIT alleges a claim for fraud based on Defendants' false representations that BIT would be compensated for bringing ESI's business to MuleSoft with a percentage of the agreement between ESI and MuleSoft. FAC ¶¶ 46-53. To state a claim for fraudulent misrepresentation under California law, the plaintiff must allege the following elements: (1) the defendant represented to the plaintiff that an important fact was true; (2) that representation was false; (3) the defendant knew that the representation was false when the defendant made it, or the defendant made the representation recklessly and without regard for its truth; (4) the defendant intended that the plaintiff rely on the representation; (5) the plaintiff reasonably relied on the representation; (6) the plaintiff was harmed; and (7) the plaintiff's reliance on the defendant's representation was a substantial factor in causing that harm to the plaintiff. Perlas v. GMAC Mortg., LLC, 187 Cal.App.4th 429, 434

(2010).

Defendants argue that the FAC fails to allege the elements of actual misrepresentation or reasonable reliance. BIT contends that the FAC establishes that Defendants made misrepresentations by FAC alleging that Defendants "represented to BIT that they were attempting work together with BIT to contract with ESI for MuleSoft subscription services from MuleSoft concurrent with technology support services from BIT, and were communicating offers to ESI on behalf of BIT." FAC ¶ 50. The FAC also alleges that Defendants "discussed with [BIT] and ESI that Plaintiff BIT would be compensated for its involvement in bringing ESI's business to MuleSoft" and that "Defendant Bradley represented to Plaintiff BIT that he was going to meet with ESI in November 2009, only for the purpose of discussing financial matters . . . [w]hen, in fact, the Defendants intended to convince ESI to contract directly with them and exclude BIT from being a party to the agreement." Id. ¶¶ 51, 54. Defendants contend that these allegations fail to demonstrate a "representation" or a "promise intended to induce reliance," but taking the allegations as true, the misrepresentation element is sufficiently alleged in support of BIT's fraud claim.

Defendants also challenge the specificity of the allegations under the heightened pleading standards for a claim of fraud:

> Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'" [Citations omitted]. Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997) (internal quotation marks omitted). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false."

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003). Here, the allegations are sufficiently specific to give notice of BIT's claim, but the fraud claim fails for failure to plead the necessary element of reliance.

To show reliance, BIT must show that the representation was "an immediate cause of his conduct which alters his legal relations, and that without such representation, he would not, in all reasonable probability, have entered into the contract or other transaction." Lacher v. Superior Court, 230 Cal.App.3d 1038, 1049 (1991) (internal quotation omitted). BIT contends that reliance is

8

sufficiently pled: "BIT entered negotiations to sell to ESI a Mulesoft subscription along with support services to be provided by BIT, initial negotiations were as side-by-side joint contracts, similar to the agreements between Defendant Mulesoft, Plaintiff BIT and Novus." FAC ¶ 46. BIT alleges that Defendants agreed to pay BIT a 40% referral fee if ESI entered a services agreement with MuleSoft. FAC ¶ 47. "Further, Defendant Bradley represented to Plaintiff that he was going to meet with ESI in November 2009, only for the purpose of discussing financial matters with ESI [when] in fact, the Defendants intended to convince ESI to contract directly with them and exclude BIT from being a party to the agreement." FAC ¶ 54. As alleged in the FAC, ESI entered a subscription agreement with MuleSoft in December 2009 without notice to BIT or any provisions related to compensating BIT, and MuleSoft refused BIT's request for a referral fee. FAC ¶¶ 56-57.

BIT contends that these allegations demonstrate that BIT "permitted Defendants to work directly with ESI *only after* BIT introduced Defendants to ESI, and Defendants made representations concerning the terms of the sale." Opp. at 8. By relying on these representations, BIT contends that it removed itself from the negotiations. Opp. at 9. Defendants point out that the FAC does not allege that BIT removed itself from the negotiations based on reliance on Defendants' representations and that BIT's exclusion from the November 2009 meeting proximately caused BIT to lose the ESI deal, but even if these allegations were set forth in the FAC, they are not sufficient to show that BIT altered its legal standing or relations with ESI or Defendants by relying on Defendants' alleged misrepresentations about the nature of the meeting with ESI in November 2009. See Engalla v. Permanente Medical Group, Inc., 15 Cal.4th 951, 976 (1997) ("Actual reliance occurs when a misrepresentation is an immediate cause of [a plaintiff's] conduct, which alters his legal relations."). Such allegations would not demonstrate that BIT's reliance on the alleged misrepresentations caused BIT to change its legal relationships with respect to MuleSoft or ESI and therefore do not sufficiently allege a claim of fraud.

### 3. Conspiracy

The FAC alleges that "MuleSoft and Bradley conspired and agreed to interfere with the contractual relationship between BIT and ESI willfully and intentionally colluding and scheming to deprive Plaintiff of the benefits of its business and contractual relationship with ESI." FAC ¶ 65.

9

This allegation fails to support a claim for conspiracy because, as the FAC alleges, Bradley is an officer and employee of MuleSoft and cannot be held liable for conspiring with the corporation under the agent's immunity rule. See Applied Equipment Corp. v. Litton Saudi Arabia LTD, 7 Cal. 4th 503, 512 n.4 (1994) ("Agents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage. The rule derives from the principle that ordinarily corporate agents and employees acting for or on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged.") (internal quotations omitted). Generally, "[a] cause of action for civil conspiracy may not arise . . . if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty." Doctors' Co. v. Superior Court, 49 Cal.3d 39, 44-49 (1989). Under the agent's immunity rule, "an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal." Pavicich v. Santucci, 85 Cal.App.4th 382, 394 (2000) (internal citations omitted). Although the FAC alleges that Bradley conspired with MuleSoft, the allegations demonstrate that Bradley, as an officer of MuleSoft, was acting as its agent and cannot be held liable for conspiring with the company.

BIT contends that Bradley is not covered by agent's immunity because he was acting "to benefit himself financially" and not only for his employer. FAC ¶ 35; Opp. at 9-10. The allegations of the FAC demonstrate, however, that Bradley's alleged purpose for secretly meeting with ESI was to have ESI execute an agreement with MuleSoft to the exclusion of BIT. Under the allegations of the FAC, any possibility of Bradley's personal monetary gain would derive only from his capacity as MuleSoft's agent. The FAC has no allegations to demonstrate that Bradley would benefit personally outside his role as an officer of MuleSoft. The FAC therefore fails to allege a claim for civil conspiracy.

### 4. Intentional Interference with Prospective Business Relations

BIT alleges that Defendants interfered with BIT's expectancy to develop a FileMover

application and provide support services for ESI which would have generated additional revenue for BIT. FAC ¶ 75. The elements of a tort claim for intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. Korea Supply Co. v. Lockheed Martin Corp., 29 Cal.4th 1134, 1153 (2003). To meet the third element of intentional acts, a plaintiff must plead intentional acts by the defendant, that are wrongful apart from the interference itself, designed to disrupt the relationship. Id. at 1154. This requires a showing that the defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself" such as "conduct that is recognized as anticompetitive under established state and federal positive law." Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 393 (1995).

      The FAC alleges that Defendants' actions were unjustified in denying BIT of its expectancy of being engaged in further agreements with ESI and by severing its relationship with BIT after BIT promoted MuleSoft's services by meeting with third party executives at a CIO summit. The allegations are sufficient to show that BIT had an existing business relationship with ESI, unlike the potential for contracts arising from contacts that BIT made at the CIO Summit which are speculative. See Westside Center Associates v. Safeway Stores 23, Inc., 42 Cal.App.4th 507, 522 (1996) ("The law precludes recovery for overly speculative expectancies by initially requiring proof the business relationship contained 'the probability of future economic benefit to the plaintiff.'")). However, Defendants' alleged misrepresentations to BIT about the nature of their meeting with ESI appear to be part of the conduct that constituted the actual interference with the prospective business prospects rather than independently wrongful conduct. As the California Supreme Court has recognized, "the facts pleaded by a plaintiff must show an intent to do something which takes the defendant's acts beyond those of a mere competitor securing business for himself." Della Penna, 11 Cal. 4th at 390-91 (citation omitted). Nowhere does the FAC allege that Defendants engaged in wrongful, unlawful conduct apart from the alleged interference with prospective business prospects,

11

as required under California law.  The FAC does not, for example, present allegations that the defendant disparaged plaintiff's products and caused plaintiff to lose prospective economic advantage with its clients.  See Silicon Labs Integration, Inc. v. Melman, 2010 WL 890140 (N.D. Cal. March 8, 2010) (RMW) (denying motion to dismiss claim for intentional interference with economic advantage where plaintiff sufficiently alleged that defendant knowingly made a false statement about plaintiff's product to meet the independently wrongful conduct requirement).  Because BIT has not adequately pled a separate cause of action such as fraud or breach of contract as the basis of independently wrongful conduct, BIT fails to allege a cause of action for interference with prospective business relations.  LiMandri v. Judkins, 52 Cal. App. 4th 326, 341 (1997).

Furthermore, the alleged misrepresentations related to Defendants' meeting with ESI in November 2009 do not constitute the "essential interference" with BIT's prospective business advantage with respect to the potential clients other than ESI.  See LiMandri, 52 Cal. App. 4th at 342 ("It is insufficient to allege the defendant engaged in tortious conduct distinct from or only tangentially related to the conduct constituting the actual interference.").  With respect to BIT's business prospects with ESI, the FAC alleges that the interference with the prospective future agreements with ESI for FileMover application and support services was caused by Defendants alleged secret meetings with ESI and by MuleSoft's "abrupt" severance of its partnership with BIT.  FAC ¶ 76.  Because the termination of the alleged partnership fails to state a claim for breach of contract, as discussed below, Defendants' allegedly wrongful conduct of misrepresenting the nature of their meetings with ESI, standing alone, did not proximately cause the interference with BIT's prospective advantage.  As currently pled, the FAC does not sufficiently allege a claim for intentional interference with prospective business advantage and Defendants' motion for judgment on the pleadings is GRANTED WITHOUT PREJUDICE.  Because the requirement of independently wrongful conduct presents a close question here, the Court grants BIT leave to amend the claim only with respect to the prospective business relations with ESI.

### 5. Breach of Contract

BIT claims that Defendants breached their partnership contract with BIT to provide support services to MuleSoft's clients "by its abrupt severance of the relationship, removing Plaintiff BIT

12

from its website and list of partners and revocation of partner password and sign on." FAC ¶¶ 92-95. BIT does not contend that its breach of contract claim is based on the 2009 Reseller Agreement, but on a preexisting partnership agreement entered in June 2007 as evidenced by MuleSoft's statements in press releases and on its website and providing BIT a partner log-in and password to its website. FAC ¶¶ 10-18.

Defendants challenge the existence of the partnership agreement, but even taking the allegations of a partnership as true, Defendants point out that the District Court for the Eastern District of Missouri recognized that the Reseller Agreement superseded any alleged partnership agreement. Reply at 11 citing doc. no. 53 at 11. See RA ¶ 14.7 ("This Agreement is the complete and exclusive statement of the mutual understanding of the parties and supersedes and cancels all previous written and oral agreements and communications relating to the subject matter of this Agreement."). Applying the forum selection clause to this action, the court held as follows:

> The Reseller Agreement encompassed all aspects of the parties' relationship as described by Plaintiff in its First Amended Complaint: BIT's right to distribute certain products and services; the terms and conditions under which those products and services were to be delivered; BIT's permission to provide maintenance and support services to customers like ESI; and even the subscription price discount BIT would receive. Furthermore, as Plaintiff does not contest, the Reseller Agreement explicitly superseded all prior agreements between the parties, removing Plaintiff's ability to rely upon the existence of an alleged partnership or any other business ventures as the basis for its allegations against Defendants. In addition, while not dispositive, the undersigned notes that it is logical to conclude that if Plaintiff is correct that its causes of action flow directly from the partnership and other business ventures, its causes of action would now flow directly from the agreement that explicitly superseded the partnership and other business ventures. Also notable but not dispositive is the fact that the conduct of which BIT complains occurred after the Reseller Agreement was executed.

Doc. no. 53 at 11. This discussion is persuasive on the question whether the RA supersedes the alleged partnership contract, and BIT offers no argument why the Eastern District of Missouri court's findings should be set aside here, or how allowing the breach of partnership contract claim to proceed in this Court would not lead to inconsistent rulings.

Notwithstanding the court's earlier ruling, BIT argues that the RA did not supersede the entire partnership agreement and contends that the RA is more narrow in scope because it "merely 'permits [BIT] to distribute certain products and services of MuleSource in a specified territory and sets for the terms and conditions under which these products and services will be delivered.'" Opp.

13

at 16 (quoting RA at page 1). BIT contends that the integration clause only supersedes "all previous written and oral agreements and communications relating to the subject matter of this Agreement," but does not state that it supersedes and cancels all previous written and oral agreements between the parties. Opp. at 16. BIT contends that the RA was only one facet of the parties' partnership, not the full extent of that business relationship. Opp. at 17. This argument is not supported by the allegations of the FAC, which state that the purpose of the partnership was to sell software license agreements and support services, areas that are covered by the RA and relate to its subject matter: "Reseller may distribute MuleSource products and services under the model designated below: License Resale: Reseller provides support and maintenance services to End Users." RA at 1. Thus, BIT does not demonstrate that the alleged partnership agreement survives the RA's integration clause. The Court agrees with the reasoning of the order issued by the Eastern District of Missouri on the question whether the RA supersedes prior partnership agreements and adopts that reasoning here.

Defendants also contend that the RA contained a non-exclusivity clause and did not grant BIT exclusive reseller rights so that MuleSoft had a contractual right to enter its own contracts with end-users. BIT responds generally that the breach of contract claim is not limited to resale of software and that the allegations of breach relate to other types of transactions in the parties' business relationship, such as side-by-side contracts. Because the provisions of the RA supersede any prior agreement between BIT and Defendants relating to the subject matter of the RA, the allegations fail to state a claim for breach of contract.

At oral argument, BIT requested leave to amend the complaint to seek remedies under the RA rather than the preexisting partnership agreement. As demonstrated by the pleadings, the original complaint alleged that Defendants breached the RA in support of the claim for breach of contract, but these allegations were abandoned in the FAC. Leave to amend to re-allege breach of the RA is therefore denied.

### 6. Newly Added Claims

The FAC added two substantive claims without leave of court: breach of fiduciary duties and breach of the implied covenant of good faith and fair dealing. These claims are dismissed for failure

14

to seek leave prior to amendment. Because amendment would be futile, these claims are dismissed with prejudice.

### a. Breach of Fiduciary Duty

In support of its breach of fiduciary duty claim, BIT alleges that as partners, Defendants owed BIT a fiduciary duty of loyalty, good faith and disclosure of material facts. FAC ¶¶ 105-106. BIT alleges that Defendants breached these duties by:

   a. Making fraudulent representations to Plaintiff BIT, and specifically Fred Domke, regarding the contract with ESI and BIT's compensation for same;

   b. Interfering with the partnership's economic advantage;

   c. Abruptly severing the partnership relationship;

   d. Conspiring to intentionally and wrongfully interfere with BIT's contractual relationship with ESI;

   e. Refusing to remit a referral or reseller fee to BIT for the ESI contract.

FAC ¶ 107. The allegations that Defendants breached their fiduciary duties essentially mirror the other underlying claims of the FAC, and BIT's claim rests on its argument that a partnership agreement existed separate and apart from the Reseller Agreement. As discussed above, however, any partnership that existed between the parties was superseded by the execution of the RA in June 2009. Furthermore, the RA provides, "The parties to the Agreement are independent contractors. There is no relationship of partnership, joint venture, employment, franchise or agency created hereby between the parties." RA ¶ 14.8. Thus, whatever fiduciary duties that Defendants may have owed to BIT under the alleged partnership were superseded by the RA. Absent a partnership relationship, Defendants did not owe fiduciary obligations to BIT as parties to a contract. See Gilman v. Dalby, 176 Cal.App.4th 606, 614 (2009) ("Absent such a relationship, a plaintiff cannot turn an ordinary breach of contract into a breach of fiduciary duty based solely on the breach of the implied covenant of good faith and fair dealing contained in every contract.") (citations omitted).

### b. Breach of Implied Covenant

BIT also alleges that its business partnership agreement with Defendants included an implied covenant of good faith and fair dealing. FAC ¶ 113. BIT does not base this claim on the parties'

contractual relationship under the RA, but on the alleged partnership that preexisted the RA. Because the RA supersedes any partnership agreement that the parties may have had concerning BIT's role in selling software and support services, no implied covenant claim can be alleged with respect to the prior partnership agreement. See Guz v. Bechtel Nat. Inc., 24 Cal.4th 317, 349-50 (2000) ("The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. The covenant thus cannot be endowed with an existence independent of its contractual underpinnings. It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.").

### III. Motion to Dismiss for Lack of Subject Matter Jurisdiction

In the alternative, Defendants seek dismissal for lack of diversity jurisdiction because the contractual limitations on damages under the RA limit BIT's recovery against MuleSoft or Bradley below the $75,000 amount in controversy requirement pursuant to 28 U.S.C. § 1332(a). See RA ¶ 9.2 ("NOTWITHSTANDING ANY OTHER PROVISION OF THIS AGREEMENT, MULESOURCE'S (AND ITS THIRD-PARTY SUPPLIERS') ENTIRE LIABILITY UNDER THIS AGREEMENT SHALL NOT EXCEED THE AMOUNT ACTUALLY PAID BY RESELLER TO MULESOURCE UNDER THIS AGREEMENT.") Because the Court grants leave to amend the claims for intentional interference with contract and with prospective economic advantage, and because those claims do not seek remedies under a contract, BIT's remedies for those claims would not be subject to the provisions of the RA limiting contractual liability. Defendants' motion to dismiss for failure to allege the requisite amount in controversy is therefore DENIED WITHOUT PREJUDICE.

### IV. Conclusion

Defendants' motion for judgment on the pleadings is GRANTED WITHOUT PREJUDICE as to the claims for intentional interference with contract and intentional interference with prospective business relations, with leave to amend the supporting allegations as set forth above, and GRANTED WITH PREJUDICE as to the remaining claims. Defendants' motion to dismiss for lack

16

of subject matter jurisdiction is DENIED WITHOUT PREJUDICE.  Plaintiff shall file an amended complaint within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated: November 28, 2011

ELIZABETH D. LAPORTE
United States Magistrate Judge